MICHEL, Circuit Judge.
I join the opinion in all respects, except Section III.B, ordering a remand regarding deductive value documents. The majority remands based on a perceived misunderstanding by VWPA as to the meaning of “source documents” for its deductive value figure found in Exhibit 55, a summary. The deductive value of imports depends critically on profits and general expenses, which are shown in Exhibit 55. Specifically, the majority speculates that ‘VWPA may have been confused because Customs’ October 23 letter refers to source documentation for Exhibits 50 and 55, and not to source documentation for exhibits such as Exhibits 58 and 60.” Exhibit 58, for example, contains VWPA’s annual financial statements and is thus itself a summary, from which the expense and profit figures in or underlying Exhibit 55 are taken. The *125 majority further theorizes that “[wjhile it can be argued that Customs and VWPA should have been more diligent in various respects, the unforeseeable events of September 11th clearly disrupted Customs to such an extent that it was not possible for the parties to ‘work diligently together’ during the critical period to resolve the matter of supporting documentation for VWPA’s deductive value claim.”
I believe we should not assume such a misunderstanding and thus excuse VWPA’s refusal to make available source documentation to support its deductive value summary, Exhibit 55. Nor should we accept VWPA’s contention that supporting that summary with other summaries, i.e., Exhibits 56-61, suffices under the statute, despite Customs’ repeated demands for actual “source documents.” Because in my judgment, the Court of International Trade (“CIT”) clearly directed in VWPA III that true “source” documents be produced, I disagree with remanding this case so that Customs can tell VWPA — again— that it requires transaction documents, such as daily journals, not just annual summaries, to support VWPA’s asserted profit and general expense figures and hence its claimed deductive value figure.
I.
In VWPA III, the CIT explained that “the government argues that the exhibits supporting the deductive and computed value calculations are themselves summary information and that the plaintiff failed to provide the source documents. ...” VWP of Am., Inc. v. United States, 163 F.Supp.2d 645, 663 (Ct. Int’l Trade 2001) (emphasis added). The CIT discussed in detail the bases for the government’s claim of “arguable inconsistencies and unsupported figures appearing in Plaintiff’s Exhibits 50 to 61,” noting the government’s alleged inability to verify the figures provided and the lack of detail to reconstruct those figures. Id. at 664 n. 35 (emphasis added). “That, and the fact that various ‘drafts’ of deductive values with differing unit prices, general expenses, and/or profits were created, the government contends, emphasizes the need for underlying data without which, the government further argues, the allocations or elements of deductive values and computed values proposed by VWPA are per se unreliable.” Id. Further, the CIT concluded that “[t]he record lacks objective reference from which to infer that VWPA’s and/or VWPC’s claimed profits and expenses are typical of importers and/or producers of fabrics of the same class or kind....” Id. at 669.
The majority points to the trial court’s language directing the parties “to work together diligently to resolve Customs’ alleged concerns regarding inconsistencies and source documentation.” This language, however, in no way implies that the parties must negotiate the types of documentation necessary to verify the accuracy of VWPA’s summary documents, such as Exhibits 55 and 58. Such an implication would be unwarranted in view of the protracted history of this case. Rather, the trial court’s instructions can only be read as rebuking VWPA for its refusal to produce the source documents first requested at the time of trial in 1996. After all, in the same concluding paragraph of its opinion, the CIT also made plain that the record “lacks the source documentation which would resolve apparent discrepancies and reconcile certain amounts claimed.” Id. (emphasis added). In any event, considering the specific arguments made by Customs and the specific treatment of those arguments by the CIT in VWPA III in 2001, the majority’s conclusion that VWPA somehow misunderstood its duty on remand is not sound.
*126 The majority is correct that not all the cooperation ordered by the CIT took place. There was, however, considerable correspondence. Ultimately, VWPA refused, despite the CIT’s unequivocal order and Customs’ later letters, to prove the accuracy and normalcy of its summary figures in Exhibit 55 with source documents.
The majority quotes the correspondence between VWPA and Customs following the CIT’s remand order as suggesting a misunderstanding as to the meaning of “source documentation.” VWPA, however, does not argue to this court, and, indeed, did not argue below, that it did not understand what “source documentation” meant. Instead, VWPA claims that its values in Exhibit 55 were supported by Exhibits 56-61, which provided sufficient verification under the applicable statute. Yet, beyond argument, those purported source documents are themselves merely annual summaries, not shown to be contemporaneous with or to reflect specifically the transactions they purport to incorporate. Supporting one annual summary (Exhibit 55) with another (Exhibit 58) still denies Customs the opportunity to verify the underlying transactional documents.
No correspondence between VWPA and Customs can negate the explicit instructions of the CIT that VWPA produce source documents from which its annual figures in Exhibit 58 were derived. Given the CIT’s discussion of these (among other) deficiencies in VWPA’s Exhibits 50 through 61, Customs’ repeated requests for source documentation underlying VWPA’s deductive value in Exhibit 55 lack ambiguity. They could only mean the transaction data, such as that contained in daily journals, from which Exhibit 58 itself was compiled. Thus, nothing in this record warrants remand.
II.
The “re-remand” required by the majority also prolongs a dispute already far too old. Customs began its investigation of VWPA in 1990. The entries in issue occurred in fiscal year 1993. Customs has already twice decided the very import duties the majority remands to it. The trade court has three times before heard this case, and our court has now decided it twice. Thus, in all, the matter already has been adjudicated five times by Article III courts and twice by an expert administrative agency. With this remand, the case now will go back for a fourth decision by the trial court and a third determination by Customs. Customs’ decision will likely lead to a fifth decision in the trial court and a third appeal here, consuming yet additional time and money of the parties, agency, taxpayers and courts. A final result then may be still several years away. Hence, it may be the year 2007 before the correct duties for these 1993 shipments are finally determined. Fourteen years to get a final result! I consider this case history appalling. Prolonging this case is also unnecessary and, to me, unacceptable. After five prior .court decisions over eight years and two Customs decisions, the first in the mid 1990’s, we should simply stop the litigation merry-go-round. Therefore, from the remand, I respectfully dissent.